## DODGE v. HOLLAND.
### No. 240.

District Court, D. New Hampshire.
June 6, 1934.

164

Herbert A. Baker, of Boston, Mass., for plaintiff.

Hector M. Holmes, of Boston, Mass., for defendant.

.MORRIS, District Judge.

This is a bill in equity to enjoin infringement of letters patent 1,743,534, issued January 14, 1930, to Milton L. Dodge of Newburyport, Mass., on an application filed June 16, 1923. The patent involves a certain form of counter stiffener used ih the shoe industry. The defendant denies infringement and alleges invalidity of the patent.

The claims alleged to be infringed are as follows:

"7. A counter stiffener having a marginal sole-attaching flange the juncture of said flange with the side portion of said counter being upwardly convex.

"8. A counter stiffener having a marginal sole-attaching flange the juncture of said flange with the side portions of said counter being inclined downwardly at their forward ends.

"9. A counter stiffener having a marginal sole-attaching flange the juncture of said flange with a side portion of said counter being inclined downwardly at its forward end."

As stated in plaintiff's application for a patent, the invention relates to shoes having integral molded counter stiffeners therein and improvements in their method of manufacture. The application further states that as heretofore constructed such counters have been provided with inturned marginal flanges at their lower edges by which they may be fastened to the shoes. This attaching flange has been formed by passing a wiper laterally over one face of a die from which the edge portion of the stiffener protrudes. The molding and flange-forming operations are done while the stiffener is in temper, and in the subsequent drying operations the flange bends back somewhat so that its outer edge is not in a plane but is somewhat convex downwardly. This action takes place both longitudinally and laterally of the stiffener and prevents the counter stiffener at the outer edge of the flange from making close contact with the shoe sole.

It is the claim of the plaintiff that such pre-molded counters as were in use prior to plaintiff's application were difficult to fit into the shoe, in that they caused a bulging at the back or spanning along the sides and in front of the heel so that it was necessary to exert considerable force to pound down the heel seat to flatten it, and in many cases to resort to "pricking" up the sides in front of the heel to prevent a distortion of the heel or sides of the finished shoe. Plaintiff claims that his patent solves the problem so that a proper fit is secured when using a pre-molded counter of the form protected by his patent. He claims that he was the first to discover that the trouble was in the front end of the counter although the defects appeared elsewhere.

It is said that different expedients were tried to remedy the trouble. One was to increase the back-rake of the heel of the counter. By "back-rake" is meant the slope of the back of the counter. By changing the angle of the slope of the counter, it was thought that it would enable the laster to bring the wings of the counter into better position over the shank portion of the last. But it was found that when this was done there was still a bulging or spanning in front of the heel portion between that and the end of the wings. Another expedient was the manufacture of right and left counters which is said to have proved equally ineffective. Dodge claims that by using a counter molded in accordance with his invention these difficulties have been solved and that it is no longer necessary in the lasting process to pound down the heel to make it contact with the last or to prick up the sides of the counter to prevent bulging or spanning. He claims that as exercised in the prior art the "pounding down" the heel seat and the resort to "pricking up" the wings of the counter were very unsatisfactory and resulted in a loss of time and poor workmanship. In changing the back-rake I understand that the counter was molded to curve or slope forwardly downward toward the attachment of the heel. It seems to me that there must have been another and perhaps a more potent reason for increasing the back-rake of counters which was that they might more closely conform to the style of women's shoes wherein the heel was set well forward of the extreme rear portion of the back of the shoe. I can appreciate, however, that with this change in the form of the heel, it would be likely to cause the wings of the counter to bulge or span or possibly to lap over each other when fitted to the inner sole of the shoe.

A more detailed account of the process used in manufacturing shoe counters seems proper to give a clear understanding of the contention of the parties.

Pre-molded counters are not new. They were manufactured long prior to Dodge's application for the patent in suit. They are usually made of fiber-board, leather, or other material of a similar nature, molded under high pressure to the desired form or shape before being put into a shoe. In the process a flat piece of material cut to form called a "blank" is first put through a rolling machine which gives it a general cup-shape so it may be more easily placed in the mold. The rolling machine also puts in the so-called crimp line along the margin of the blank. The crimping makes it easier to fold the inturned flange around the back of the heel seat, but to reach the heel seat portion of the blank, the crimping roll passes over the wing portions so that the crimp line extends the full length of the margin of the blank. It will be noticed that a distinct crimp line appears on all the sample counters introduced in evidence and that it may be felt by passing a finger along the edge of the counter blank or shaped counters.

The cupped blank is then tempered (softened) by placing it in water so that it becomes flexible and pliable and in a condition to be molded under pressure. The next is the molding operation to make it conform to the contour of the last of the shoe in which the particular counter is to be used. When the shoe manufacturer wants a counter for a particular form of shoe, he submits a last of the desired form to a counter manufacturer. If the manufacturer has on hand a mold which can be filed to the shape of the last, he shapes it to the last by filing it; otherwise he gives the last to a mold manufacturer to cast a new mold to conform to the desired shape. The mold is an iron plug with two complimentary iron jaws which press the flexible counter blanks against the plug under high pressure to mold the blank into the exact shape of the plug and jaws to make it conform to the contour of the rear portion of the last. The shaping of the iron plug and jaws is a very delicate operation and is carried to a fine degree of exactness. When the jaws and plug are completed, they form a mold to shape the counter blank, while in temper, into a definite shape that conforms to the last. All of the curves of the last are reproduced in the counter. To the extent that the mold duplicates the contour of the last to that extent will the counter conform to the last. It is desirable that the heel seat of the counter should be flat. The next process in molding the counter is the formation of the flange. This is accomplished by inserting the counter blank in the mold leaving the upper margin protruding above the face of the plug and jaws and passing over it a heavy wiper which turns the protruding edges of the counter blank inwardly forming a flange at the heel seat and forwardly on the wings so far as found desirable.

There appears to be several different styles of counters. In the so-called "short counters" the wings do not extend forwardly of the heel seat to any considerable length. In all of the counters of this class that have been exhibited the wiper seems to have been passed over the plug and projecting margin of the counter blank making an inturned flange the entire length of the counter forming a sharply defined line of juncture between the flange and side walls. This line of juncture is referred to in defendant's brief as a vertex line. A comparatively flat surface is thus formed for the attachment of the heel. Just when it became customary to lengthen the wings of counters is not disclosed in the evidence.

It is clear that if the margin of the counter blank projecting from between the jaws and plug is ironed down on a flat surface throughout its entire length, the inturned flat ledge of the heel seat end will extend the entire length of the counter wings. It is said that the process of forming a flange the entire length of counters with long wings is objectionable in good shoemaking because the vertex line between the flange and side walls is liable to show through the outside leather in a finished shoe. It is further claimed by counsel for the defendant that in the manufacture of counters with long wings it is desirable that the wings of the counter beyond the heel seat should approximate a true curve and eliminate any vertex line. This is accomplished by filing off the sharp edges of the forward portion of the plug leaving it in the form of a curve so that when the wiper passes over it no juncture line is formed forwardly of the heel seat and the wings present approximately an unbroken curve or roll. The vertex line is eliminated.

Roland Stewart, a member of the firm of Stewart Brothers, manufacturers of counter-making machinery, testified that "quite often the counter manufacturer will mark on the last where he wants that to start," meaning the point at which the flange line is to disappear and the curvature of the wings to start. The form of counters last above described have been referred to in the testimony as "released counters."

An examination of Complainant's Exhibits 2, 2a, and 2b, introduced as samples of the offending counters, appear to the court to have been molded on a plug used for molding "released counters," and the question is presented whether or not they infringe complainant's patent.

Complainant's counsel in argument says: "The patent in suit relates to two distinct improvements in counter manufacture. The first one is that of over-molding the flange so that it will dry in substantial lateral allinement. With this feature our case is not concerned. The other improvement which is directly involved in claims 7, 8 and 9, and which is the matter of discussion in the instant case, is the longitudinal molding which produces the curvature of the juncture between the flange and side portions of the counter. Though in the specifications of the patent the two features are described as being used jointly or embodied in a unitary structure, it is obvious, if desired, either feature may be used alone. This appears clearly from the claims in which claim 10 expressly differentiates from claims 7, 8, and 9, by adding the limitation referring to the substantial allinement transversely of the flange."

The language of claims 7, 8, 9, and 10, is particularly noted. Each claim uses the language, "a counter stiffener having a sole-attaching flange." This language indicates as clearly as words can express it that counters manufactured in accordance with the patent are not "released counters" but counters having a flange extending the entire length of the wings. Such is the sample of an offending counter attached to plaintiff's answers to defendant's interrogatories propounded in advance of the filing of defendant's answer. The sample is certainly a counter with a flange extending its entire length. Further than that, it has a depressed flange like Exhibit D, similar to counters made for Dodge by Spaulding Brothers for use in turned shoes.

Exhibits 2, 2a, and 2b, offered in evidence as examples of infringing counters, are not shaped like the Exhibit D, in that the marginal flange does not extend the entire length of the wings and the flange is not depressed. To this extent they do not infringe plaintiff's patent.

The only other point raised is whether or not the fact that wings of the offending counters incline downwardly forward of the heel seat is an infringement of plaintiff's patent as expressed in claims 7, 8, and 9. In determining that question resort may be had to the specifications of the patent forming a part of the application and to proceedings in the same patent office as disclosed in the file wrapper. O. H. Jewell Filter Co. v. Jackson (C. C. A.) 140 F. 340.

There is no question but that the forward portion of the wings are downwardly inclined. The downward inclination of the forward portion of the wings is formed by being molded on a plug concave in form instead of presenting a flat surface.

Page 1, line 56, of the specifications of the patent in suit reads: "When the forward ends are inclined downwardly as in the preferred construction, they are caused to be in substantially lateral allinement by the pressing action by the time the counter is dry. By this means the attaching flange is so positioned that the defects above enumerated due to the downward convexity of the flange are overcome improving the appearance and wearing qualities of the shoe." This language, as I interpret it, connotes an attaching flange extending the entire length of the wings. The downward incline of the wings is mentioned only as a preferred construction and not an essential form.

Claims 1, 2, 3, and 4, of the patent in suit make no reference to the downward incline of the forward end of the counter. So far as appears from the language of the above-mentioned claims, such a counter could be molded on a flat plug. It is not until we get to claim 5, that any mention is made of the patentee's preferred form of counter with the forward portions of the flange in substantial allinement from side to side and sloping downwardly from a flat plane. It thus appears from a reading of the entire patent that the patentee has tried to cover the entire range in matter of form from a counter all portions of which lie in the same plane and one with its wing portions curving downwardly.

As I study the language of the several claims, I am satisfied that the essential feature of the patent has to do with the flange and its outside juncture with the side walls of the counter and that the downward curvature is not an essential feature but merely a preferred one.

It is apparent that if long counters are to be used, particularly in ladies' shoes with high heels, the downward curvature of the wing end would more closely conform to the

instep of the shoe. This is not a matter of invention but a matter of form. If a counter were molded on a straight plug, it would be more difficult for the laster to fit the wings of the counter to the last at its instep portion.

An examination of the file wrapper, page 34, discloses that the words, "to conform to the curvature of the sole of the shoe forwardly of the heel seat," were introduced in claim 5 at the suggestion of the examiner. On page 35, the following language appears: "However, these claims have been amended to specify the functions, claims 4 and 6 to state that the edge of the attaching flange is bent upwardly while in temper so that when it is dried out it will not project outwardly of the level of its outer edge, while claim 5 now specifies that the forward ends of the *counter stiffener attaching flange* are inclined downwardly to conform to the sole of the shoe forwardly of the heel seat. It is believed that these amendments should meet the examiner's requirements, although, as before stated, it is believed that there is no proper warrant for any such requirement." (Italics mine.)

A careful study of the several claims of the patent with respect to the downward curvature of the end of the wings forwardly of the heel seat convinces me that it was not an essential of the patentee's original conception but was merely a preferred form to adapt his flange counter to conform to the natural sole of the shoe at its instep.

■ I am also convinced and hold that the essential form of Dodge's counter contemplates an attaching flange the entire length of the counter whether the forward wings are downwardly inclined or whether the entire counter lies in the same plane. A juncture line the entire length of the wings seems to be an essential characteristic feature of the counter protected by the patent in suit. I find that no patentable invention was involved in curving downwardly the vertex or juncture line of the flange. It was a mere change of form of the most obvious kind in order to make the ends of the counter conform to the curvature of the inner sole of the shoe.

I cannot bring myself to the point of holding that the plaintiff, because of the patent in suit, has a monopoly of all long shoe counters with wings molded to fit the instep or arch of a shoe.

The claims in complainant's patent are confined within extremely narrow limits. If he invented anything patentable not anticipated by prior use (a point which I have not found it necessary to consider), the defendant's counter stiffeners, being of the form heretofore described as "released counters" with their forward parts describing an approximate curve or roll upwardly in which the flange disappears forward of the heel seat, do not infringe counters described in plaintiff's patent wherein a vertex line formed by the juncture of the flange with the side walls extend the entire length of the counter. I so hold notwithstanding the forward portions of the defendant's counters are curved downwardly.

The order is: Complainant's bill dismissed, with costs.